HENRY STAGG, Respondent, *vs.* MARY A. LINNENFELSER, Appellant.

1. *Bills and notes—Negotiability—Administration—Law merchant.*—Although the statute of 3, 4 Anne C. 9 is the source from whence our statute respecting bills of exchange is derived, (Wagn. Stat., 216, § 15,) and although our statute provides that promissory notes expressed to be for value received shall " be negotiable in like manner as in land bills of exchange ;" yet under the provisions of Wagn. Stat., (p. 89, § 40,) promissory notes, payable to a decedent, can be assigned after his death only by a duly qualified executor or administrator, and then alone, to discharge the claims of creditors, legatees or distributees equal to the amount of the notes.

2. *Bills and notes—Indorser—Guarantor.*—Although it has been held in this State, that one not a party to a note, who puts his name upon the back of the note prior to its being put in circulation, will be presumed to be an original promisor, and held liable as such, yet if such indorsement is made after delivery of the note, the indorser would be held to be only a guarantor, and will not be chargeable as such, unless a legal consideration for the guaranty be shown.

3. *Bills and notes—Indorsement—Estoppel—Old age—Ignorance.*—A woman who was named as sole legatee of her husband, indorsed certain notes belonging to his estate, signing her name as " sole legatee." It appeared that she was very old and ignorant of business, understanding English very imperfectly, could not read what had been written, and signed her name by cross-mark; and that the purchaser relied upon his own information and judgment, *held,* that the widow was not estopped from denying that she had any title to the note.

*Appeal from St. Louis Circuit Court.*

James C. Moody, for Appellant.

I. Defendant never was the owner of these notes, and had no right to transfer them. The addition to her name is mere surplusage. Even if she had qualified as executrix she still would have had no right or power to transfer the notes without proper action of the Probate Court. In such case the rights of creditors of deceased persons must be regarded. She therefore created no liability by the indorsement, passed no title to Ketterer, and he passed none to respondent, and respondent has no title to the notes and no right of action upon them.

Defendant is shown to be very old and ignorant of the English language, and did not know what she was doing. But respondent, was smart enough to have known what he was about. There is, therefore, no innocent holder without notice here. (Exchange Bank vs. Cooper, 40 Mo., 169.)

*James Carr, with H. A. McGindley*, for Appellant.

I. There is no cause of action stated in respondent's petition, in this; that there is no allegation in the petition that letters testamentary were granted to the appellant by said Probate Court; or that she ever accepted the trust reposed in her by said will. This is a traversible allegation, and should have been made. (Hulbert vs. Young, 13 How. Pr., 413; Lyle vs. Smith, *Id.*, 104; Hoftaling vs. Teal, 11 How. Pr., 188; Burnham vs. Bevorse, 8 How. Pr., 159; Stanley vs. Chapel, 8 Cow., 236; Higgins vs. H. & St. Jo. R. R. Co., 36 Mo., 418.)

II. The appellant had no legal right to take said notes into her possession, or to interfere with them prior to the granting of letters testamentary to her. (Wagn. Stat., 84, §§ 5, 6; Stagg vs. Greene, 47 Mo., 500.)

III. The notes ceased to be negotiable after the death of Frederick Linnenfelser, the payee, and at best they were only assignable instruments and not negotiable notes, within the meaning of the statute in regard to bills of exchange and promissory notes. (Weaver vs. Beard, 21 Mo., 155; Ivory vs. Catlin, 30 Mo., 142.) And appellant not having assigned to respondent directly, he cannot maintain this action directly against her. (Bromage vs. Lloyd, 1 Exch., 32; Gough vs. Findon, 7 Exch., 48; Sto. Prom. Notes, §§ 120, 123.)

Not having accepted the trust in the manner prescribed by our statute, in such cases made and provided, she could not impart that which she did not have, *i. e.*, the legal title to said notes to respondent. (Stagg vs. Greene, *supra;* Sto. Prom. Notes, §§ 120, 123; Dwight vs. Newell, 15 Ill., 333.)

Appellant is neither payee, maker nor indorser of said notes, within the import of any of those terms as understood

by the law merchant or our statute in regard to bills and promissory notes. (Malbon vs. Southard, 36 Me., 147.) The petition does not seek to hold her liable as being a joint maker. She is not named as payee in the face of the note. She cannot sustain the relation of first indorser, because she is not named as payee. She is not claimed to be a second or other indorser. And as the only ground upon which respondent seeks to hold her liable, i. e., as deriving title through herself as executrix, has failed, it follows then that the respondent shows no legal title to the notes sued on, and as a consequence the judgment of the court below must be reversed for want of sufficient allegations in the petition.

*P. E. Bland*, for Respondent.

The only point presented in this case for the consideration of the court, is, whether Mrs. Linnenfelser's act of putting these notes into circulation by her indorsement and delivery of them, renders her liable to the *bona fide* holder.

I. The said act operates an estoppel on her to deny that the title was in her, or that she had right to transfer the paper. (Taylor & Mason vs. Zepp, 14 Mo., 482; Dezell vs. Odell, 3 Hill, 219; Henman vs. Hook, 37 Mo., 207; Chouteau vs. Goddin, 39 Mo., 439; Camp vs. Byrne, 41 Mo., 525; Grant vs. White, 42 Mo., 285.)

II. But aside from the doctrine of estoppel, Mrs. Linnenfelser's indorsement rendered her liable to the holder. (Burrell vs. Smith, 7 Pick., 291; Bailey Bills, 111, 115; Sto. Prom. Notes, §§ 118, 479; Chitty's Bills, [11 Am. ed.] 201.)

Where a third party puts his name on the back of a negotiable promissory note, there is much diversity among authorities as to his precise character and liabilities. But all concede that the act must have some legal effect. He must either be a joint maker, and so not entitled to notice of presentment and dishonor, or as a surety, or as guarantor with the liabilities belonging to such, or as a second indorser. (Lewis vs. Harvey, 18 Mo., 74.)

In the case here, the indorsement itself is conclusive as to the capacity in which it was made. The indorsement could not have been made in the capacity of surety or guarantor for the maker to the payee, for it was after the making and delivery of the note to the payee, and after his death, for it is expressly made in the capacity of " sole legatee" of the payee. Her indorsement is, therefore, that of a holder or owner deriving or claiming to derive title from the payee. It is impossible that such an indorsement was intended to create a liability on the part of the indorser to the payee as a first indorser, or that it should be other than to assume the liability of a second indorser.

SHERWOOD, Judge, delivered the opinion of the court.

By the terms of her husband's will, the defendant became the sole legatee of all his property, both real and personal, including the promissory notes in suit, executed to the testator by Theo. P. Greene. Although the will was duly probated, the defendant never qualified as executrix, in accordance with her appointment as such, nor does the petition so allege. It does, however, charge, that, as executrix, she took possession of the assets of the estate, transferred the notes by delivery to herself as sole legatee, thereby becoming absolute owner, and for value indorsed and delivered the same before maturity to Ketterer, who in like manner transferred them to plaintiff. The non-payment of the notes at maturity, and notice thereof given to defendant, are also alleged. The answer put in issue the chief averments of the petition.

The negotiability of bills of exchange does not rest on positive law, but on the custom of merchants, which in process of time and with the increase of trade, ripened into what is known as the common law merchant. By that ancient usage, if the party in whose favor the bill was drawn, died, it was customary for his executor or administrator to negotiate it with like effect as if done by the testator or intestate. And this usage prevails in most if not all of the states of this country. Promissory notes were also embraced within the custom

referred to, and were negotiable by the payees or their personal representatives, in the same manner as were bills of exchange. But it having been held in England, that promissory notes were incapable of being thus transferred, and were not within the custom of merchants, the statute of 3 and 4 Anne, C. 9, was passed, which, after reciting the above mentioned ruling, provides that promissory notes should thereafter, (*i. e.*, from May 1st. 1705) " be assignable or indorsable over, in the same manner as inland bills of exchange are or may be, according to the custom of merchants." The first case which arose under this act was that of Rawlinson vs. Stone, (3 Wils., 1) where it appeared that an administratrix had transferred the note in suit, which had been made payable to her husband; the court holding that the whole property in the note was vested in the administratrix, and that since the statute of 3 and 4 Anne, which recognized the custom of merchants in respect to bills of exchange, and placed promissory notes upon the same footing with those instruments, it was competent for the administratrix to transfer the note, and the transferree to maintain his action thereon.

Our statute respecting bills of exchange, providing that promissory notes expressed to be for value received, etc., etc., (Wagn. Stat., 216, § 15) should " be negotiable in like manner as inland bills of exchange," is no doubt derived from the statute of Anne, and if a familiar rule is to prevail, should be received with the construction placed upon it where first enacted, unless something in our own laws should forbid. Besides, we have in this State adopted the common law of England (of which the custom of merchant formed a part) as it existed " prior to the fourth year of the reign of James the First," and save where it is local to that kingdom, or repugnant to or inconsistent with the constitution of the United States, of this State or of the statutes in force for the time being, is to be the rule of action and decision here. (Wagn. Stat., 886, § 1.)

This adoption of the common law occurred in 1816. The right of an executor or administrator to negotiate a bill or

note drawn in favor of, or made payable to his decedent is asserted in all its broadness by the text writers as unquestioned law. (1 Pars. N. and B., 157; Sto. Confl. L., § 359; Sto. Bill Exch., §§ 72, 74; Sto. Prom. Notes, § 120; Wm's Ex'rs, 806.) And also by the courts of last resort in many of our sister States. (Malbon vs. Southard, 36 Me., 147; Owen vs. Moody, 7 Cush., 79; Prosser vs. Leatherman, 4 How., [Miss.] 241; Dwight vs. Newell, 15 Ill., 333; Sanders vs. Blaine's Adm'r, 6 J. J. Marsh, 446; Sutherland vs. Brush, 7 Johns. Ch., 17; Wheeler vs. Wheeler, 9 Cow., 34; Rand vs. Hubbard, 4 Met., 252.) But it will be observed upon examination, both of the text writers and of the reports of many of the States, that 3 Wils., *supra*, is, when authority is deemed worthy of citation, relied on.

Now it must be evident that 3 Wils. cannot be authority for the transfer by an executor or administrator of promissory notes, except in those States where the statute of 3 and 4 Anne took effect at the period of its enactment, or has subsequently become the law in consequence of legislative recognition or adoption. It may be that in some of the States the right of an executor or administrator to indorse a bill or promissory note is deduced as a necessary sequence from the doctrine of the common law prevailing in those States, which regards such personal representative as the absolute owner of the personalty.

But this doctrine of the common law does not prevail in this State, and the power of the personal representative of the decedent, whether testator or intestate, to dispose of the assets is limited and regulated by law. This was the express ruling of this court in Stagg vs. Greene, (47 Mo., 500) where it was held, that until an executrix has taken the steps prescribed by the statute, and become thus qualified according to law, she possessed no power to transfer a promissory note made payable to her testator; and that the petition which failed to aver her compliance with the statutory requirement, was bad on demurrer, as showing no title in the plaintiff to the instrument sued on. Again, our legislature has pointed out only

one instance in which executors or administrators may assign notes and bonds of the estate, and that is in discharge of the claims of creditors, legatees or · distributees, equal to the amount of the bond or note. (Wagn. Stat., 89, § 40.)

As declaratory of the common law right of an executor or administrator to dispose of the personalty of his decedent, such legislative permission would obviously be devoid of meaning. This being the case, the section referred to, whatever may be thought of its possessing sufficient comprehensiveness to embrace bills of exchange, may be safely and fairly assumed to be restricted in its operation as to notes and bonds, and to preclude their transfer, except where the statutory exigency arises, or the will under which the executor acts and is qualified, so provides.

If this view be correct, then it follows that the negotiability of promissory notes in this State, except in the instance mentioned, must, contrary to an everywhere prevalent rule, cease with the death of the payee. But it may be urged that the notes in question were bequeathed by the payee to the defendant, that she takes by virtue of the will, and therefore that the statute cited has no bearing on the case at bar. In reference to this, it can be said, that if our construction of the statute is the proper one, then non-negotiability is the rule, and the instance designated by the statute constitutes the only exception. And as the executrix has never qualified, the negotiability of the notes must be regarded as suspended or in abeyance, until such time as there is some one empowered, either under the law or under the will, to effect their transfer.

It has been held in this State, that if a person not a party to a note writes his name on the back prior to its being put into circulation, he will, in the absence of extrinsic evidence, be deemed an original promissor, and liable in that capacity. (Powell vs. Thomas, 7 Mo., 440 ; Lewis vs. Harvey, 18 Mo., 74.) And the same view of the law is entertained in Massachusetts (Moies vs. Bird, 11 Mass., 436). But a different rule obtains where, as in the present instance, the affixing of the

signature occurs long after the delivery of the note to the payee.   Thus in Tenney vs. Prince, 4 Pick., 385, a negotiable note was indorsed before maturity in blank, by a person not a party thereto, nine months after its delivery, and above the indorsement the plaintiff wrote a promissory note, and brought suit thereon, and it was held that the defendant could not be charged as an original promissor, but merely as guarantor, " as that was the only form of engagement consistent with the time and circumstances under which the signature was made," and it was further held that the defendant would not be chargeable on the guaranty, unless a legal consideration for that collateral undertaking were shown.   There was no evidence in that case as to the intent with which the signature was made, nor that any value was received for the indorsement; and the court remarked that the ground upon which a party was held as an original promisor, was because he was supposed to be a participant of the consideration. And the judgment in that cause was reversed on account of the form of the action, and because no consideration for the signature was established.   Judge Gamble, in Lewis v. Harvey, *supra*, adverted to the distinction between that case and the one just cited from Massachusetts.

With what intent the signature of the defendant was placed on the notes, does not appear, nor does it appear when the words usually employed in an ordinary indorsement were written above her name, nor that she received any consideration therefor.   The only consideration received, so far as the testimony indicates, was by Ketterer, who indorsed the notes to plaintiff.   The American authorities seem in substantial uniformity in holding that if the indorsement is made in blank, and as a subsequent and distinct transaction, not in any way connected with the formation of the note, that then the indorser is not to be treated as anything more at most than a guarantor.   (Sto. Prom. N., §§ 474, 475.)

In Massachusetts, as already seen, (Tenney vs. Prince, *supra*,) the rule is the same as to a negotiable note when simi-

larly indorsed. And no good reason is seen why the same results should not attend the subsequent undertaking in the one case as well as in the other. In other words, if a contemporaneous indorsement is to indicate an absolute promise, then the converse of this should hold good that a subsequent indorsement shall only imply a collateral agreement of the above indicated character, whether the note is, or is not negotiable. So that it matters little whether we affirm or deny the negotiability of the note in suit, as in either event the defendant would not be chargeable as indorser, as is attempted in the present action.

It is not intended to assert that a person may not bind himself by any contract he sees fit to make in reference to paper to which he is not a party; it is only designed to state what, in the absence of evidence, are to be deemed legitimate inferences in reference to that contract, having regard to the time and circumstances under which it is made. On the part of the plaintiff, it is however strenuously insisted, that he should recover on the ground that the defendant is estopped to deny that she had any title to the notes, after having indorsed them as "sole legatee." At what time these words were written does not appear, but the evidence clearly shows that the defendant is very old, ignorant of business, understanding English very imperfectly, could not read it when written, signed her mark to her name, and made no representations whatever. In addition to that, the plaintiff, prior to obtaining the notes from Ketterer, relied upon his own information, pursued his own inquiries, and formed his own conclusions. It is very plain, therefore, that there are none of the elements of an estoppel about this case. (Big. Estop., 473.)

In conclusion, the plaintiff neither by the allegations of his petition, nor by the evidence adduced in their support, has shown any title to the notes. And it would contravene the policy of our law, and often result in the wasting of estates by irresponsible persons, to the great detriment of creditors

and of others directly interested in the proper administration of the assets, were our sanction given to the recovery obtained by the plaintiff in the court below.

The judgment is reversed and the cause remanded; the other judges concur.