GEORGE SOAPS

V.

LOUIS EICHBERG ET AL.

*Negotiable Instruments—Alteration—Evidence—Instructions.*

1.  Proof of the execution of an instrument sued on is not under our statute necessary as at common law, unless that issue be raised by a verified plea denying its execution.

2.  Where the genuineness of the signature is not denied, but the defense is that the instrument has been altered since it was signed, a plea setting out in detail the alleged alteration is more appropriate than to attempt to raise the point by filing a verified plea denying its execution.

3.  A material alteration made in a note by the payee after its delivery by the maker, without his consent, renders it void, and this rule governs where the alteration is made by the payee's consent although not by him personally.

4.  While at common law the rule was that if the alteration in a written instrument was a material one, it could not be received in evidence, no matter by whom the alteration was made, an alteration made by a stranger is now regarded as a spoliation, and secondary evidence is admissible to show the original condition; but to admit such evidence, it must first be shown that the change in the paper was not by the acts, assistance or even the *laches* of the holder.

5.  An alteration by or with the consent of the holder, if material, destroys a given note as evidence as effectually, though innocently done, as if done with fraudulent intent; but if innocently done, though the instrument is destroyed, the original debt remains and recovery may be had upon it.

6.  It is only when an attempt is made to abandon the instrument as evidence, and recover upon the original indebtedness or consideration, that it becomes important to inquire as to the intent with which the alteration was made, for the reason that the written instrument, being the best evidence of

the contract or undertaking of a party, must be produced or accounted for. If a party seeks to excuse its production on the ground that it has been altered since its execution, the law requires him to show why it was changed. If it appears to have been changed without wrongful intent, or from ignorance, or with good inten', so that its validity as evidence is destroyed the law will permit recovery upon the original consideration; but if the intent was an evil or fraudulent one, the instrument is not only avoided, but the fraud or wrong bars the remedy upon the debt itself.

7.   Any alteration which, in any event, may alter the maker's liability, change his rights, duties or obligations, is material.

8.   The addition of another maker, made with the assistance and complicity of the holder, is a material alteration and destroys the validity of a note as evidence.

9.   The admissions of a party as to a fact, no matter how made, may be given in evidence against him.   Common law pleadings are admissible in evidence.

[Opinion filed December 3, 1891.]

In ERROR to the Circuit Court of Macoupin County; the Hon. J. J. PHILLIPS, Judge, presiding.

Mr. A. N. YANCEY, for plaintiff in error.

The addition of the name of a maker to an instrument already signed by several makers, is a material alteration.   It discharges the original makers and binds the additional signer. Hamilton v. Hooper, 46 Ia. 515; Dickerman v. Miner, 43 Ia. 508; Wallace v. Jewell, 21 Ohio (N. S.), 163; Lunt v. Silver, 5 Mo. App. 186; Haskell v. Chamion, 30 Mo. 136; Henry v. Coats, 17 Ind. 161; Shipp v. Suggett, 9 B. Mon. (Ky.) 5; Addison on Contracts, Sec. 1280.

The addition of new sureties without the consent of the original, is a material alteration which discharges the non-consenting surety.   Bamer v. Briggs, 2 Ind. 139.

Messrs. ANDERSON & BELL and RICHARD E. DORSEY, for defendants in error.

If it be true, as plaintiff in error claims, that Soaps signed as surety for Walker, and that the note was fully executed in the hands of the payee, and that afterward Courtney signed the same, then the only legal conclusion is this :   That Courtney, having signed after the full execution of the note, could

not be held without some new and independent consideration moving to him.   1 Parsons on Contracts, 6th Ed., 244; Good v. Martin, 95 U. S. R. 90; Joslyn v. Collinson, 26 Ill. 62; Harwood v. Kiersted, 20 Ill. 367; Story on Promissory Notes, Sec. 467; Cassell v. Morrison, 8 Ill. App. 175; Anderson v. Norvill, 10 Ill. App. 240.

And thus if we suéd Courtney, they would defend on the line above mentioned.   If we sued Soaps, they would take the position they now seek to hold.

In Ives v. McHard, 2 Ill. App. 176, in a careful opinion by the court, it is said: "Where a note is, long after its execution, signed by some one, either on the face or on the back as security, the person so signing, if there were a consideration, is separately liable as a guarantor.   Some judges think that such a signing is an alteration which destroys the note as to the other makers if done without their consent.   In our judgment, however, this is not the law."

See authorities cited by the court in this case.

Boggs, J.   This was an action of assumpsit brought by defendants in error against the plaintiff to recover upon a promissory note assigned to them by Mary A. Sawyer.

It appears that one J. H. Walker arranged to borrow $150 from Mary A. Sawyer for the purpose of sending it to his brother-in-law, B. F. Courtney, who then lived in Kansas, and was in need of assistance.   Courtney was a son-in-law of Mrs. Sawyer.   A note was delivered to Mrs. Sawyer by Walker, of which the following is a copy:

"STAUNTON, ILL., June 16th, 1880.

One year after date we, or either of us, promise to pay Mary A. Sawyer, or order, $150, value received of her, with interest from date at the rate of eight per cent until paid.

| | |
|---|---|
| THOMAS X. LANDERS, | OLIVER X. PIPER, |
| WILLIAM SOAPS, | GALEN FRANCIS, |
| GEORGE W. MIZE, | JOSEPH SAWYER, JR. |
| GEORGE SOAPS, | FRANK GODFREY, |
| J. H. WALKER, | M. C. SAWYER, |
| J. T. COTHRAN, | JOHN McMULLEN, |
| E. E. GODFREY, | WILLIAM X. BROWN." |

Mrs. Sawyer on receiving the note gave the money to Walker, who sent it to Courtney.

Courtney returned from Kansas in the summer of 1881, and after the note fell due and while it yet belonged to Mrs. Sawyer, signed the note, placing his signature just above that of plaintiff in error and at the top of the left hand column of makers' names. Courtney testifies: "I signed the note after its maturity; it was in the hands of Mrs. Sawyer and I signed it at her request; she told me if I would sign it she would extend the time of its payment for six months, and in consideration of that I signed. Soaps was not present; knew nothing of my signing it. I never talked with him about it until after Eichberg had the note. I did not first propose to sign the note, but signed at Mrs. Sawyer's request, and on condition she would extend the payment."

Concerning the signing by Courtney, Mrs. Sawyer testifies, "Courtney came back from Kansas in summer of 1881; he was at my house one day and said he had not signed that note and that if I would get it he would sign it. I got it and he signed it. I did not ask him to do so. He proposed to sign it himself. I did not agree to extend the time of payment if he would sign it. Don't recollect that Walker said anything about Courtney signing the note when he delivered it to me. Never talked with Soaps about it. I sold the note to the plaintiff several years after Courtney signed it."

The note was assigned, without recourse, by Mrs. Sawyer to defendants in error several years after it fell due and after it had been signed by Courtney, and this suit was brought upon it by defendants in error, against plaintiff in error alone, to the September term, 1888, of the Macoupin Circuit Court. The declaration contained two counts.

The second count, omitting the usual allegation of assignment, liability of defendant to pay to the assignees, and the breach, is as follows:

"And whereas, also, heretofore, to wit, on the sixteenth day of June, A. D. 1880, at Staunton, Ill., to wit, at said county of Macoupin, the said defendant, Geo. W. Soaps, for value received, executed to one Mary A. Sawyer his certain other promissory note in the words and figures following:

"No. 134. Staunton, Ill., June 16, 1880. One year after date we, or either of us, promise to pay Mary A. Sawyer, or order, $150, value received of her, with interest from date at the rate of eight per cent until paid.

Signed,     GEORGE SOAPS.

"And the plaintiffs aver that after the execution and delivery of said note, the said Mary A. Sawyer then being the payee therein named and the legal holder thereof, to better secure the payment of the said sum of money in said note specified, procures divers other persons to sign said note and to become also liable for the payment thereof, according to the tenor and effect of said note, all of which said actings and doings were without the knowledge or consent of the defendant and have never since the commission thereon, been ratified or assented to by the defendant."

A demurrer was sustained to this second count, and under leave given an amended declaration was filed which contained two counts, the first setting out the note *in haec verba*, including the signature of Courtney, the second setting out the note *in haec verba*, omitting the signature of Courtney.

To this declaration plaintiff in error filed the general issue, a plea denying the execution of the instrument sued on, verified by his oath, and a plea that the time of payment of the note had been extended. Issue was joined by *similiter* to the first and second pleas, and issue was made on the third plea by denial of the alleged agreement for an extension of the time of payment.

A trial was had before the court and a jury resulting in a judgment against the plaintiff in error for $269.57, to reverse which this writ of error is prosecuted.

It is first assigned for error that the note, over the objection of plaintiff in error, was received in evidence and read to the jury without proof of its execution. Under our statute proof of the execution of the instrument sued on is not as at common law necessary, unless that issue be raised by a verified plea denying its execution. Such a plea properly verified was interposed and proof of its execution was therefore required

before the note could properly be read in evidence. Templeton v. Hayward, 65 Ill. 178; Zuel v. Bowen, 78 Ill. 234.

We are, however, strongly inclined to regard this as a harmless error, for the reason that the genuineness of the signature of plaintiff in error to the note was not really denied by him, in fact he admitted it to be genuine when he was testifying as a witness.

The real purpose in presenting this plea was to raise the question of the legal effect of the addition of the name of Courtney to the note, which plaintiff in error claimed so altered the instrument as to make it no longer his note.

It was treated by the court and the parties as a proper plea for that purpose, and under it proof as to the alteration of the note was received and by the authority of an intimation in Pankey v. Mitchell, Breese, 383, it may be regarded as raising that issue, though where the genuineness of the signature is not denied, but the defense is that the instrument has been altered since it was signed, we think a plea setting out in detail the alleged alteration would at least be more appropriate. 2 Parsons on Notes and Bills, 580.

Accepting it as a proper plea for the purpose mentioned, we come to the consideration of the effect of the addition of the name of Courtney to the note.

If the evidence on the part of the defendant in error alone is considered, it is conclusively shown that after the note had been signed by all the makers and delivered to the payee (Mrs. Sawyer), and indeed after the note had become due, that Mrs. Sawyer, the holder and owner of it (the note), delivered it into the hands of Courtney for the express purpose of permitting and allowing him to sign it as a maker, and that he did sign it in her presence and with her full knowledge and consent.

It may be stated as well settled, that a material alteration made in a note by the payee after its delivery by the makers, without the consent of the makers, renders the note itself void. Pankey v. Mitchell, Breese, 383; Gillett v. Sweat, 1 Gilm. 489; Gardiner v. Harbeck, 21 Ill. 129; 1 Greenleaf on Ev. Sec. 565; 3 Parsons on Notes and Bills, 571 and 580; Benjamin v. McConnell, 4 Gilm. 536.

Soaps v. Eichberg.

Though the signature of Courtney was not made by the payee but by himself, yet the payee produced the note as she testifies, and handed it to Courtney, for the express purpose of enabling him to attach his name to it. He did sign it in her presence, with her full knowledge and consent, and by her assistance to such an extent that we are unable to draw any distinction between the effect of the act as done and the effect had Mrs. Sawyer herself, with Courtney's consent, written his name to the note.

The doctrine of the common law was that if the alteration in a written instrument was a material one, the instrument could not be received in evidence, no matter by whom the alteration was made, but an alteration made by a stranger to an instrument is now regarded as a spoliation, and secondary evidence is admissible to show its original condition. 2 Parsons on Notes and Bills, 574.

But to admit this secondary evidence, it must first be shown that the change in the paper was not by the acts, assistance or even the *laches* of the holder. 2 Parsons on Notes and Bills, 574. So it has been held, and correctly too, that if an alteration is made with the privity of the holder the effect is the same as if made by the holder. Wallace v. Jewell, 21 Ohio, 163.

It follows, therefore, that the alteration made in the note in this case must affect the paper as evidence precisely as if the name of Courtney had been written by Mrs. Sawyer with his consent.

It now remains to be determined, whether or not it was a material alteration, and in that connection it is urged that unless made with fraudulent intent it is not material.

It may be at the outset admitted that the change or alteration was done with no wrongful intent. The alteration, however, if material, destroys the note as evidence as effectually, though innocently done, as if done with fraudulent intent. 2 Parsons on Notes and Bills, 572.

If innocently done, though the instrument is destroyed, the original debt remains, and recovery may be had upon it. Elliot v. Blair, 47 Ill. 342.

It is only when an attempt is made to abandon the instrument as evidence and recover upon the original indebtedness or consideration, that it becomes important to inquire as to the intent with which the alteration was made, for the reason that the written instrument being the best evidence of the contract or undertaking of a party, must be produced or accounted for. If a party seeks to excuse its production on the ground that it has been altered since its execution, the law requires him to show why it was changed. If it appears to have been changed without wrongful intent, or from ignorance, or with good intent, so that its validity as evidence is destroyed the law will permit recovery upon the original consideration; but if the intent was an evil or fraudulent one, the instrument is not only avoided, but the fraud or wrong bars the remedy upon the debt itself. To this effect see Elliot v. Blair, 47 Ill. 342.

A material alteration made by the payee or with the privity of the payee takes away the validity of the instrument as a matter of evidence. Was the change a material one?

Any alteration which in any event *may* alter the maker's liability, change his rights, duties or obligations, is material. 2 Parsons on Notes and Bills, 582.

The maker is not required to show that he has actually been prejudiced or damaged by the alteration; and courts are not to look as to that; the true inquiry is not, *has* the maker been actually injured by the alteration, but *might* he have been injured. 2 Parsons on Notes and Bills, 551.

It might at first thought seem that the addition of a maker to a note could but be beneficial to the other makers, but upon reflection we think it will be found that it may greatly injure and damage them.

One of the effects of the alteration is to destroy the identity of the note, and this, if another maker be a security and have indemnity, may greatly embarrass or possibly entirely defeat its enforcement. If the original makers have a demand against the payee which they could lawfully set off against the note, the addition of another maker would destroy that right. The place of residence of an additional maker may

be such as to permit the payee or holder to institute suit upon
the note in another county from which he otherwise could
have done, and thus some of the makers may be required to
go to a foreign county to present any defenses that may exist
to the note, or if the name of the additional maker be so placed
upon the note as to indicate him as the principal maker, as it
is claimed it does in this case, then all makers who are
merely sureties may be greatly prejudiced and damaged and
doubtless such an alteration in a note might prejudice the
makers in other ways which can not be anticipated and sug-
gested in advance.

Upon grounds of good public policy courts ought to dis-
countenance alterations of contracts once agreed upon, reduced
to writing and formally signed, and refuse to receive in evi-
dence any instrument, if it had been by the complicity of the
holder materially changed, without requiring the maker to
show that he has been actually injured and damaged by the
wilful and intentional alteration of the contract.

The addition of another maker to a note may operate to
greatly damage and prejudice all other payors, and when, as
in this case, the addition is made with the assistance and com-
plicity of the holder, it must be deemed and held a material
alteration and to destroy the validity of the note as evidence.
2 Parsons on Notes and Bills, 557, 561, 571 and 581; Nichol-
son v. Combs, 90 Ind. 515; Hamilton v. Hooper, 46 Ia. 515;
Addison on Contracts, Sec. 1280; Haskell v. Chanion, 30 Mo.
136; Wallace v. Jewell, 21 Ohio, 8, 163; Sheriff v. Suggett, 9
B. Mon. 8.

At the request of the plaintiff in error the court, on this
point, gave the following instruction :

"The court instructs the jury for the defendant, that under
the plea of *non est factum*, in this case, they must not only
determine whether the defendant signed the note, but whether
the note has been materially altered since it was executed and
delivered by the defendant and his co-makers to the plaintiff's
assignor, Mary Sawyer; and if the jury believe from the evi-
dence in this case that after the execution and delivery of the
note in controversy in this case, the said Mary Sawyer pro-

cured the signature to said note of one Frank Courtney, with-
out the knowledge or consent of defendant, that such altera-
tion would be material and would discharge the defendant
from any liability on the same.   And if they so believe, the
jury should find for the defendant."

And at the request of the defendant in error the court gave
this instruction:

" If the jury believe from the evidence that the defendant,
George Soaps, executed the promissory note in evidence as
charged in either count of the plaintiff's declaration, the fact
(if it is a fact shown by the evidence) that the witness, Court-
ney, after the execution of said note signed the same either
with or without the knowledge of the defendant, does not
make such an alteration of the note as would affect the liabil-
ity of the defendant, and the defendant would remain liable on
said note notwithstanding such signing by Courtney."

No other instruction was given bearing upon this branch of
the case.

The first of these instructions, it may be conceded, states the
law correctly, but it was only applicable in case the jury
should find from the evidence that Mrs. Sawyer procured
Courtney to sign the note, and it left them wholly unadvised
as to the effect of the alteration if the jury, though not find-
ing that Mrs. Sawyer did procure Courtney to sign, yet did
believe from the evidence, as was clearly and conclusively
proven, that she brought the note to Courtney and placed it
in his hands for the express purpose of allowing and permit-
ting him to alter it, and that he did so with her full and free
knowledge and consent.   Desiring to know the rule of the
law applicable to that state of the case, the jury would natu-
rally and properly consult the other instruction, and in that
they are told in absolute and unconditional terms that the
addition of the name of Courtney, whether with or without
the knowledge or consent of Soaps, did not in any degree
affect the liability of Soaps, and that notwithstanding the
signing by Courtney, the note must be paid by Soaps.   If
the two instructions are not wholly irreconcilable the only
conclusion to be drawn from a consideration of both of them

is, that an alteration of a note only affects its validity when the payee procures another person to make the change in it, which we think is not the law. The last instruction is so radically wrong, and the first so likely to mislead, that the verdict of the jury may well be attributed to a misapprehension as to the true state of the law on the question.

It is urged, however, that the jury may have found that the plaintiff in error ratified the act of signing by Courtney. The only testimony tending to prove a ratification is that of Samuel A. Friedman, one of the plaintiffs in error, which is as follows:

"I asked Soaps if he did not understand Courtney was to sign the note when he signed it. He said he did." On cross-examination the witness said he was a witness in the County Court at a time when this case was tried there and that he then testified to this alleged conversation with Soaps, the same as he had sworn to it. Soaps testified that he did not have the conversation with Friedman, and that Friedman did not testify to it in the County Court.

James Colboran, Frank Courtney and John Walker each testified that they were present in the County Court at the trial referred to by Friedman, and heard him testify, and that he did not on that occasion testify anything about the alleged conversation with Soaps.

Plaintiff in error then offered in evidence the second count of the first declaration filed by the defendants in error, in which it is averred that Mary A. Sawyer, while she was the payee of the note after the execution, the better to secure its payment, procured divers persons to sign the note, all of which was without the knowledge or consent of Soaps, and which had never since then been ratified by him.

The court, upon the objection of the defendants in error, refused to allow the count to be read to the jury, which is assigned as a ground of error. We think the rule is, that the admissions of a party as to a fact, no matter how made, may be given in evidence against him.

Bills in chancery and answers in chancery have uniformly been deemed admissible in evidence, and that, too, without

regard to whether such pleading were sworn to or not.   Robbins v. Butler, 24 Ill. 387; Daub v. Englebach, 109 Ill. 267.

In the case last cited an unsworn answer which, like the declaration in the case at bar, had been withdrawn from the files by leave of court, was held to be competent evidence, and in relation to that it is there said: "It is wholly immaterial whether the answer was sworn to or not and it does not matter that it was withdrawn from the files."

While at common law fictions are recognized in pleadings, and it was not required that pleadings should state the truth, yet the decided weight of authority is that common law pleadings are admissible in evidence.   Wharton on Evidence, Sec. 838; Lyster v. Stickney, 4 McCrary C. C. 109; Gery v. Mannel, 89 N. C. 83; Peckham Iron Co. v. Harper, 41 Ohio State, 100; Boots et al. v. Cannon, 94 Ind. 408.   Much that has been said against the admissibility of this count in the declaration, applies not so much to its competency but to its weight and value as evidence.

If it was admissible it should have been submitted to the jury, who are the judge of its weight as evidence.   If it tended to support the issue upon the part of the plaintiff in error, he had the right to the benefit of it.   The burden of proving that Soaps consented to, or ratified the signing by Courtney, rested upon the defendants in error.   The only evidence relied upon to establish the knowledge of, or ratification by, Soaps of the act of Courtney, was the testimony of Friedman, one of the plaintiffs.   In this he was directly contradicted by Soaps, and the weight of his evidence was affected by the testimony of Cothran, Courtney and Walker, which tended to contradict and impeach it, and at this juncture the statements in the second count of the declaration, if admitted, might have been of decided value to the plaintiffs in error.   It was subject to explanation which might, of course, have greatly weakened its effect.

The plaintiff in error was entitled to the benefit of whatever weight the jury might have given, and we think it was error to exclude it.

It may be said that the evidence heard developed the

whole of the transaction between the parties, which resulted in the execution of the note, and that the original indebtedness and consideration was proven, and the alteration being without fraudulent intent the judgment for the plaintiff below should be upheld.   Without expressing any opinion as to the existence of an original indebtedness, or as to right of assignees of an original indebtedness to sue in their own names at law, it is sufficient to say that each count of the declaration declares upon a note, and that evidence of the original indebtedness could not be applied to sustain a recovery under the pleadings.

For the reasons given the judgment must be reversed and the cause remanded.

*Reversed and remanded.*