75 485
99 327

BELL *et al., Plaintiffs in Error,* v. SIMPSON.

1. **Promissory Notes**: CONSIDERATION. C. being indebted to plaintiffs upon a purchase of goods, transferred the goods to K. as part of the price of land purchased of K. C. afterward re-sold the land to K. and received as part of the price, the note of K. for $1,000. He then transferred this note to S. as part of the price of another tract of land bought of S., and secured this note, with others for the remainder of the purchase money, by a deed of trust upon this land. Plaintiffs threatened proceedings in bankruptcy against C., to prevent which he and K. induced S. to indorse without recourse the $1,000 note to plaintiffs, and to place the same in escrow with a third party, to be delivered to plaintiffs in satisfaction of C.'s indebtedness, upon the execution and delivery to S. by C. of a deed of trust upon said tract of land securing a like amount, which C. then promised to do, and afterward did. *Held,* that this promise and the abandonment of the threatened proceedings in bankruptcy were sufficient consideration for the indorsement to plaintiffs by S. of the $1,000 note.

2. ———: DEED OF TRUST. The indorsement without recourse of a note secured by deed of trust, carries with it the trust deed as a security.

*Error to Carroll Circuit Court.*—HON: E. J. BROADDUS, Judge.

REVERSED.

*Marshall & Barclay* for plaintiffs in error.

The settlement was a benefit to Chinn by discharging

his debt to plaintiffs; and a contemporaneous benefit to a third person, based on the promise of another, is a valid consideration for the promise of that other. *Cress v. Blodgett,* 64 Mo. 449; *Rogers v. Gosnell,* 51 Mo. 466. Forbearance of legal proceedings against a debtor is a sufficient consideration for a promise by a third party to become surety or to do anything else in respect to the matter. *Russell v. Babcock,* 14 Me. 138; *Vinal v. Richardson,* 13 Allen 521; *Read v. French,* 28 N. Y. 285. The consideration for a contract need not appear on its face, but may be proved *aliunde,* or inferred from the terms of the agreement. *Arms v. Ashley,* 4 Pick. 71. Plaintiffs were not strangers to the consideration; the contract was made for their benefit. *Flanagan v. Hutchinson,* 47 Mo. 237; *Meyer v. Lowell,* 44 Mo. 328; *Fitzgerald v. Barker,* 70 Mo. 685. The assignment of a note, secured by a deed of trust, carries with it the security, as an incident. *Mitchell v. Ladew,* 36 Mo. 526; *Watson v. Hawkins,* 60 Mo. 550. The transfer of a note secured by the vendor's equity only has the same effect. *Adams v. Cowherd,* 30 Mo. 458; *Sloan v. Campbell,* 71 Mo. 387; *Bailey v. Smock,* 61 Mo. 213. An indorsement without recourse merely excludes the liability as indorser, nothing more. Daniel Neg. Insts., (2 Ed.) § 727; *Ticonic Bank v. Smiley,* 27 Me. 225; *Calhoun v. Albin,* 48 Mo. 304.

*Shewalter & Mirick* for defendant in error.

The alleged agreement has no elements of fairness or equity in it. It is an attempt simply to appropriate Simpson's property to the payment of Chinn's debt. *Linville v. Savage,* 58 Mo. 248; 1 Story Eq., (5 Ed.) §§ 188, 161. The agreement was purely voluntary on the part of Simpson. The bankrupt proceeding could not affect him in any event. His right to collect the purchase money for the land sold was not dependent upon the bankruptcy proceedings. Chinn's agreement to give a lien upon real estate was in law an agreement to give it upon unincumbered property,

and the tender of a deed of trust upon property otherwise incumbered was not a compliance with the agreement; and his agreement could have no effect until executed. *Ayres v. Milroy*, 53 Mo. 516. A court of equity will not decree the enforcement of an executory contract, if it appears to be inequitable, injust or oppressive. 2 Story Eq., § 769; *Taylor v. Williams*, 45 Mo. 83.

HOUGH, J.—One J. F. Chinn, a merchant, being indebted to the plaintiffs for goods sold by them to him, in the sum of $1,000, sold his entire stock of goods in September, 1873, to one Wm. M. Kendrick, for forty acres of land, valued at $1,200, and about $600 in cash. On the 16th day of September, 1873, Chinn re-sold the same land to said Kendrick, and took in payment therefor Kendrick's note for $1,000, payable in twelve months from said date, with ten per cent interest from date. Chinn thereupon purchased from the defendant Simpson eighty acres of land estimated by some of the witnesses to be worth about $2,000, for which he paid some cash, and executed his two promissory notes each for $300, dated September 16th, 1873, one payable on or before March, 1875, and one payable on or before March, 1876, with interest, and also transferred to him the Kendrick note for $1,000, above mentioned, all of which notes were secured by a deed of trust on the land purchased, executed by Chinn and wife to the defendant Winfrey as trustee. The plaintiffs threatened Chinn with proceedings in bankruptcy, and he and Kendrick being desirous that their trade should not be disturbed, notified Simpson of the apprehended trouble, and they and an agent of the plaintiffs went together to the office of Hale & Eads, attorneys in Carrollton, on the 24th day of December, 1873, to confer with each other. Mr. Hale testified that there were then present, Mr. Rathell, agent for Henry Bell & Son, (the plaintiffs,) Mr. Kendrick, the maker of the note in question, Mr. Chinn, the grantor in the deed of trust, and Mr. Simpson, the bene-

ficiary therein.    These parties talked some two or three hours over their respective interests and at last mutually agreed that " Simpson should assign without recourse the said thousand dollar Kendrick note to the plaintiffs, Henry Bell & Son, in payment of their $1,000 debt against said Chinn, and deposit the same with Hale & Eads to be by us delivered to plaintiffs whenever the said Chinn should execute to said Simpson a deed of trust on the eighty acres of land, sold by Simpson to Chinn, for $1,000, with ten per cent interest per annum from September 16th, 1873. In execution of that agreement, the said defendant Simpson, thereupon assigned without recourse, by written indorsement thereon, the said $1,000 Kendrick note, and deposited the same with us, (*i. e.,* Hale & Eads,) to be by us delivered to Henry Bell & Son whenever said Chinn should comply with said agreement; and thereupon, with the knowledge and consent of all the parties to said transaction, we executed and delivered to Simpson the receipt or written indorsement."

The instrument referred to is as follows :

" Hardin Simpson has this day left with us a $1,000 note, executed by Wm. M. Kendrick to James F. Chinn, which has been assigned to him ; said note is assigned by him without recourse, and is to be delivered by us to Henry Bell & Son, whenever said Chinn executes to said Simpson a deed of trust on the eighty acres of land, sold by him to Chinn, for $1,000, with ten per cent interest per annum from September 16th, 1873.

" December 24th, 1873.

"HALE & EADS."

Mr. Hale also testified that during these negotiations leading to the execution of the escrow agreement, he had suggested to Simpson that he had better get an attorney to advise him in the matter, that " he (witness) rather thought that Simpson supposed he was only releasing his claim on Kendrick to Bell, and was to get an unincumbered lien upon said real estate (subject only to his original

deed of trust) in place of the Kendrick note; but Simpson did not so state, nor was there anything to that effect expressed by any of the parties to said transaction; it was simply a supposition of my own; and that was one of the reasons why I suggested to Simpson that he had better consult his lawyer before making the trade."

The indorsements on the Kendrick note for $1,000 are as follows: "For value received, I hereby assign the within note to Hardin Simpson

JAMES F. CHINN."

"I assign the within note to Henry Bell & Son without any recourse on me in law or equity. 24th December, 1873.

H. SIMPSON."

It appears from the evidence that on the 30th December, 1873, Chinn and wife executed a deed of trust to the defendant Simpson on the eighty acres of land purchased of him, to secure a note for $1,027 made by Chinn to Simpson in pursuance of this agreement. Several days after the note and trust deed were delivered to Simpson, he declared that he would not accept the same; that the terms of the agreement had not been complied with, inasmuch as a judgment had been rendered against Chinn on the 22nd day of December, 1873, for $150, which was a lien on the land, and his agreement with Chinn was for an unincumbered title. The defendant Simpson also testified that it was agreed between Chinn and himself that when the Kendrick note was transferred to the plaintiffs, the land was to be released from the trust as to said note, and as plaintiffs refused to execute a release, he forbade Hale & Eads to deliver the Kendrick note to plaintiffs. Thereupon Hale & Eads declined to surrender the note, deeming it best that the parties interested should settle their rights in court. Kendrick died insolvent soon after the transaction stated. On the 25th day of October, 1875, Winfrey, the trustee, acting solely under the direction of Simpson, and with knowledge of the facts stated, sold the

land under the trust deed, and Simpson became the purchaser thereof for the sum of $900, and on November 26th, 1875, sold the same to one Shannon for $1,200, who in February, 1876, sold the same for $4,000.

The plaintiffs then instituted this suit to compel the delivery to them of the Kendrick note, asking also that it be adjudged to be paid out of the proceeds of the sale under the trust deed, wrongfully received by Simpson from Winfrey, the trustee, and also for judgment against Winfrey for the sum so wrongfully paid by him to Simpson. The circuit court found for the defendants, and dismissed the bill.

There can be no question as to the sufficiency of the consideration for the indorsement to plaintiffs, by Simpson, of the Kendrick note. The claim of the plaintiffs against Chinn, the abandonment by them of proceedings in bankruptcy against him, which involved the title to the Kendrick note, and the promise of Chinn to give his own note secured by mortgage, constitute beyond all controversy, a sufficient consideration for the transfer of the note. Conceding that the receipt given to Simpson by Messrs. Hale & Eads does not, in itself, constitute a contract on the part of Simpson, we are of opinion from a careful examination of all the evidence, that it correctly represents the contract between the plaintiffs, Chinn and Simpson.

The indorsement by Simpson of the Kendrick note to the plaintiffs, though without recourse, nevertheless carried with it the deed of trust as a security. There is no intimation anywhere in the evidence that there was any agreement on the part of plaintiffs to release the deed of trust so far as the Kendrick note was concerned. Simpson himself might have extinguished the trust deed as to this note before transferring it to the plaintiffs, but he did not do so. By his indorsement he transferred both the note and the deed of trust to the plaintiffs, and Chinn was to make him a second deed of trust on the same land to secure his note for $1,027. Simpson testified that the land was to be

conveyed to him by Chinn free from all incumbrances, except the deed of trust in his own favor. This could only have been accomplished, after Simpson's indorsement, by a release from the plaintiffs, or by Chinn taking up the Kendrick note; and there is nothing in the record to lead us even to suppose that either of these things was contemplated by the parties at the time of their agreement. Indeed the character of Simpson's indorsement on the Kendrick note refutes any such supposition, as Simpson thereby stipulated only for exemption from personal liability, and transferred the right to the security afforded by the trust deed; and Chinn was utterly unable to pay his debt or take up the Kendrick note.

It is quite plain, we think, that Simpson was not advised of the judgment which had been rendered against Chinn, and supposed the land was free from all incumbrances save the trust deed made for his benefit, and it very soon became evident that he very imprudently failed to provide in his agreement against such a contingency. Whether the covenants in his trust deed will afford him any protection this record does not advise us. The parties seem to have made their own agreement without the aid of attorneys, and Hale & Eads simply reduced it to writing as they had made it, and became custodians of the Kendrick note as they had agreed. We can but feel that Simpson is to suffer greater loss from this transaction, than would have befallen him, had he taken proper counsel, but we are powerless to relieve him from the consequences of his own neglect and want of prudence. On the other hand, the plaintiffs, relying upon the rights acquired by them, have doubtless foregone other remedies to which they might have resorted.

We are of opinion that the judgment of the circuit court should be reversed, and the cause will be remanded with directions to the circuit court to enter up judgment as prayed. The other judges concur, except Judge RAY, not sitting.