# MECHANICS' AMERICAN NATIONAL BANK, Appellant, v. M. HELMBACHER, Respondent.

Springfield Court of Appeals, February 6, 1918.

1. **NEGOTIABLE NOTE.** The presumption is in favor of the integrity of a negotiable promissory note; but if the note on its face appears to be in different handwriting, written at different times and in different ink, this destroys the presumption of integrity.

2. **HOLDER IN DUE COURSE.** By the Negotiable Instruments Act the holder in due course is one who takes such instrument complete and regular on its face, before due, in good faith, for value and without notice, at the time it was negotiated, of any infirmity in the instrument, or defect in the title of the person negotiating, it and notice of such infirmity, or defect, requires actual knowledge of such facts as will make the act of taking the instrument amount to bad faith. An endorsee cannot shut his eyes to things apparent on the face of the instrument and seek security in the mere assertion that he did not know.

3. **MATERIAL ALTERATION.** Change in the place of payment with no intention to defraud is a material alteration; change in the

date; in the sum payable, either for principal or interest; the number, or relation of the parties, or the medium of currency in which payment is to be made, or which adds a place of payment where no place of payment is specified, or any other change, or addition, which alters the effect of the instrument in any respect, is a material alteration.

4. **PLACE OF PAYMENT.** The shearing off the place of payment is the same as a change of the place of payment, or the addition of a place, when no place is specified.

5. **ENDORSEE'S KNOWLEDGE.** If an endorsee had actual knowledge at the time he took the note that the place of payment had been removed, or changed, or knowledge of such facts that his action in taking the instrument amounted to bad faith, then he cannot be a holder in due course.

6. **QUESTION FOR THE COURT.** Where the evidence is such that no two reasonable men could differ, such questions should be determined by direction of the court and in this case we find no substantial evidence justifying the submission to the jury of the question of plaintiff's actual knowledge that the place of payment had been removed, or knowledge of such facts as to make the taking amount to bad faith.

7. **ALTERATION: Beneficial: Injurious.** It is equally unimportant whether the alteration was beneficial or injurious. The question is not whether the party has been or could be injuriously affected, but whether or not his rights have been materially affected. It necessarily follows that any alteration of an instrument by which it is made to cover a subject-matter greater, or less, or different than that embraced in it before the alteration is material. The motive with which the words were written is entirely immaterial so far as their effect as an alteration is concerned. A material alteration by one not a stranger to it will avoid the instrument, though innocently made.

8. **ORIGINAL TENOR.** A holder in due course can recover only according to the original tenor of the note.

Appeal from Scott County Circuit Court.—*Hon. Frank Kelly,* Judge.

AFFIRMED.

*Leahy, Saunders* and *Barth* for appellant.

*Gallavin & Finch,* and *Oliver & Oliver,* for respondent.

BRADLEY, J.—This is a suit on a promissory note for $1500 dated May 28, 1915, payable on or before January 1, 1916, interest at eight per centum. This note is as follows:

"$1500                              Oran, Mo. May 28, 1915.

"On or before Jan. 1, 1916 after date we promise to pay to the order of C. D. West, Trustee Fifteen hundred————00/00 Dollars For value received negotiable and payable without defalcation or discount and with interest from date at the rate of eight per cent per annum and if the interest be not paid annually to become as principal and bear the same rate of interest until paid. (signed)
PETER DIRNBERGER, M. HELMBACHER.

"Bk. of Oran, Mo.

"Due Jan. 1, 1916. (endorsed on back) C. D. WEST, Trustee."

Upon trial, before the court and a jury, judgment below was for the defendant, and plaintiff appealed.

The payee of the note as originally written was C. D. West. Plaintiff claims to be the holder in due course, for value, and without notice of any infirmities. The defense is that since the signing and delivery of said note it has been materially altered, mutilated and changed in this manner: (1) That the relation of the parties to the instrument has been materially changed by inserting after the name of the payee, C. D. West, the word "trustee" without the knowledge or consent of the defendant; (2) that the end of the note has been cut off, thereby cutting off "payable a" in said note, and inserting "Bk of" over "Oran, Mo." and it is claimed this changed the place of payment; (3) and that some memorandum or writing has been cut off the end of said note, which memorandum or writing rendered said note non-negotiable; (4) that the note was executed on condition that certain mer-- chandise and other property, including some real estate, assigned by Dirnberger to C. D. West as trustee for the benefit of creditors, would be returned to Dirnber-

ger; and that this property was not returned, and that there was therefore no consideration for the note.

It seems that Dirnberger, who had been conducting a grocery store had not prospered, and was being pressed by creditors. In this situation he made an assignment, and C. D. West, adjuster for the Credit Men's Association of St. Louis was made the assignee. The defendant signed the note with Dirnberger as accommodation maker. The note was filled out by defendant at his residence on a blank form taken from his blank note book at which time it was signed by Dirnberger and defendant, and was delivered to Dirnberger. A blank from defendant's note book was introduced at the trial, and by comparison the portion cut off clearly appears from the photographic copies in the record. Shortly thereafter Dirnberger delivered the note to H. E. Robocker, credit manager of Adam Roth Grocery Company. Robocker soon thereafter delivered the note to West, who on June 5, 1915, discounted the same at plaintiff bank, and the proceeds were deposited to his credit as trustee for Dirnberger, and paid out to the creditors of Dirnberger. Robocker testified that when he received the note from Dirnberger it was in the same condition as at the trial, except the "Bk of" was not on it, and it did not then of course bear the endorsement of C. D. West, trustee. C. L. Allen, assistant cashier of plaintiff bank testified that when he discounted the note for his bank it was in the same condition as at the trial. West testified that he did not think that "Bk of" was written on the note when he received it from Robocker, but that the word "trustee" was in the note when he received it. It is conceded that the word "trustee" was written, and that the end of the note was cut off and "Bk of" inserted, after defendant signed the note, and all this without his knowledge or consent. Two questions arise upon this record: (1) Is plaintiff a holder in due course? (2) Did the addition of "trustee" and "Bk of" and cutting off "payable a" under the circumstances so change the relation of the parties and the

place of payment as to amount to a material alteration? The statute, section 10022, Revised Statutes 1909, defines a holder in due course as follows: "A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." The presumption is in favor of the integrity of a negotiable promissory note; but if the note on its face appears to be in different handwriting, written at different times and in different ink, this destroys the presumption of integrity. [Exchange Bank v. Robinson, 185 Mo. App. l. c. 586, 172 S. W. 628, and cases there cited.] An analogous principle is approved in Collison v. Norman, 191 S. W. (Mo.) l. c. 62; Carson v. Lumber Company, 192 S. W. (Mo.) l. c. 1021. In Beavers v. Bank, 177 Mo. App. l. c. 108, 163 S. W. 529, the court says: "It is true that by the Negotiable Instruments Act, section 10022, Revised Statutes 1909, the holder in due course of a negotiable instrument is one who takes such instrument complete and regular on its face, before due, in good faith, for value and without notice, at the time it was negotiated, of any infirmity in the instrument or defect in the title of the person negotiating it and that by section 10026, to constitute notice of such infirmity or defect actual knowledge must exist or knowledge of such facts as will make the act of taking the instrument amount to bad faith." The note sued on, by the most casual inspection shown that the word "trustee" and Bk of" were written in this note in a different handwriting, and in different ink to that in which the balance of the note was written in; ("Bk of" was in pencil) and the evidence shows conclusively that these additions were made at a different time to that when the balance of the note was written. Also

it is apparent that not less than an inch had been cut off the end, severing about midway the time-honored picture of an indian in full regalia mounted on his charger; and it appears that some writing was in this operation severed from the back of this note, as there was left on the back a loop or dot in ink of some letter or character which the shears did not include; perchance to have included this loop or dot would have invaded too deeply the face of the note. While it is true that by the statute the endorsee must have actual knowledge of infirmities in order to take him out of the class of holder in due course or such facts must appear as to make the taking of the note amount to bad faith; yet it would be shallow reason to permit an endorsee to shut his eyes to things apparent on the face of the instrument, and seek security in the mere assertion that he did not know. The Uniform Negotiable Instrument Law now adopted in most every State was not intended to make the game of hide and seek less difficult, but was intended to render more certain the rights on the one hand and obligations on the other of the parties, whether makers, endorsers, or endorsees.

The appellate courts of our State so far as we are able to ascertain have not determined any case in which sections 10094 and 10095, Revised Statutes 1909, have been in question: (the subject of these sections is material alterations) but other jurisdictions have had identical sections under consideration. In Berks County Trust Company v. Lyte, 95 Atl. (Pa.) 719 Lyte signed a note as accommodation maker for one Lansinger. The note was payable to the order of themselves; both endorsed the note and plaintiff discounted it for value; Lansinger after Lyte had signed and endorsed the note, without the knowledge or consent of Lyte, changed the place of payment. This change was made with no intention to defraud or deceive, but was made because Lansinger had no Berks County Trust Company blank note; and was made apparently to accommodate the trust company to whom he was selling the note. Lansinger advised

plaintiff that he had made the change when he negotiated the note. Lyte rested his defense upon this change. Pennsylvania's statute in this respect is the same as our section 10094, Revised Statutes 1909, which is as follows: "Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized or assented to the alterations and subsequent indorsers. But when an instrument has been materially altered and is in the hands of a holder in due course not a party to the alteration, he may enforce payment thereof according to its original tenor." Section 10095 must necessarily be considered in connection with section 10094 as they relate to the same subject—material alterations. Section 10095 Revised Statutes 1909, is as follows: "Any alteration which changes: (1) The date; (2) the sum payable, either for principal or interest; (3) the time or place of payment; (4) the number of relation of the parties; (5) the medium of currency in which payment is to be made or which adds a place of payment where no place of payment is specified or any other change or addition which alters the effect of the instrument in any respect, is a material alteration." The Supreme Court of Pennsylvania held that this note was void, because there had been a material alteration, and plaintiff having knowledge thereof could not be a holder in due course. It is urged that the addition of "Bk of" did not change the place of payment, that is was a mere pencil memorandum for convenience of the holder to know some bank to which to send it for collection. If "payable a" had not been cut off the note, and "Bk of" had been inserted as it is, the note would plainly read "payable at Bk of Oran, Mo." This plainly means payable at Bank of Oran, Mo. If the note had been written in the first instance "payable at Bk of Oran, Mo.," what reason could be given that this did not mean "payable at Bank of Oran, Mo." The note originally read "payable at Oran, Mo." Payable at Oran, Mo., cannot be

construed to mean "payable at the Bank of Oran, Mo." In this connection it is well to notice section 10057, Revised Statutes 1909, which is as follows: "Where the instrument is made payable at a bank, it is equivalent to an order to the bank to pay the same for the account of the principal debtor thereon. But where the instrument is made payable at a fixed or determinable future time, the order to the bank to pay is limited to the day of maturity only." From this section is will clearly appear why a maker may not desire that his note be payable at a given bank, because such designation is equivalent to an order to the bank to pay the note on its due date, and charge to the account of the maker. Had the defendant desired he would have made this note payable at the Bank of Oran. It cannot be controverted that the note was originally payable at Oran, Missouri, and by the shearing off the end thereof the place of payment as designated was removed. While presentment for payment is not necessary in order to charge the person primarily liable, but if the instrument is by its terms payable at a special place, and he is able and willing to pay it there at maturity, such ability and willingness are equivalent to a tender of payment upon his part. section 10040, Revised Statutes 1909. The addition noted was originally payable at Oran, Mo., and the shearing off the place of payment if immaterial would result in depriving the defendant of his rights under section 10040, Revised Statutes 1909. The addition of a place of payment where no place is specified is a material alteration. [Section 10095, R. S. 1909, supra.] The shearing off the place of payment is on principle the same as a change of the place of payment or the addition of a place when no place is specified, and if an endorsee had actual knowledge at the time he took the note that the place of payment had been removed or changed or knowledge of such facts that his action in taking the instrument amounted to bad faith (section 10026, R. S. 1909), then he cannot be a holder in due course. These are questions of fact

for the jury under proper instructions, but where the evidence is such that no two reasonable men could differ such questions should be determined by direction of the court; and in the case at bar we find no substantial evidence justifying the submission to the jury of the questions of plaintiff's actual knowledge that the place of payment had been removed or knowledge of such facts as to make the taking amount to bad faith. To remove or destroy the place of payment might easily affect a party's substantial rights, but that such actually be the result is not necessary. In Gray v. Williams, 99 Atl. (Vt.) 735, while decided before the Negotiable Instrument Law became effective in Vermont, is sound in principle. There the court said l. c. 738: "It is of no importance whether, as a matter of fact, the alteration has changed the situation of the parties. That is material which might become material. It follows that any alteration which may in any event change the rights, interest, duties, or obligations of the parties sought to be charged is material in the legal sense. It is equally unimportant whether the alteration was beneficial or injurious. The question is not whether the party has been or could be injuriously affected, but whether or not his rights have been materially affected. It necessarily follows that any alteration of an instrument by which it is made to cover a subject-matter greater, or less or different than that embraced in it before the alteration is material. It is urged that the plaintiff wrote the words on the note in good faith, honestly believing that he was authorized to do so by Gilbert H. Williams, and intending only to make the instrument conform to the original agreement; that, if defendant's claim be accepted as true, the added words did not make a lien, but were nothing more than a memorandum; but that, if considered an alteration, it did not invalidate the note, as the alteration was made without fraudulent intent. The motive with which the words were written is entirely immaterial so far as their effect as an alteration is concerned. A material altera-

tion by one not a stranger to it will avoid the instru-
ment, though innocently made.'' With these observa-
tions we hold that plaintiff cannot be a holder in due
course. If not a holder in due course without actual
knowledge of such infirmities, or without knowledge of
such facts as to make the taking of the note amount
to bad faith, then plaintiff cannot recover, because the
note under such circumstances is void except as
against a party who has himself made, authorized or
assented to the alterations, and subsequent endorsers.
In any event the holder in due course of a note which
has been materially altered, except as pointed out in
section 10094, Revised Statutes 1909, can only re-
cover according to its original tenor. The maker when
the note leaves his hands has only engaged that he
will pay it according to the original tenor. [Section
10030, R. S. 1909.] The original tenor with reference
to place of payment was Oran, Mo. The removal of
the place of payment under the facts here obtaining
will defeat recovery; but we will dispose of the other
feature of material alteration.

(2). Did the addition of the word ''trustee''
change the relation of the parties, and amount to a
material alteration? In Flintcraft v. Trust Company,
60 Atl. (Pa.) 557, plaintiff conveyed certain real
property to one Robinson as trustee. Thereafter Robin-
son erased from the deed the word trustee, and pro-
cured a loan on said property from defendant. Plain-
tiff sued to cancel the deed. The court, l. c. 559, said:
''The removal of the word ''trustee'' destroyed the
identity of the instrument, and altered its legal import,
changed the relationship of the parties, and varied the
mode of proof concerning their rights.'' So in the
case at bar the insertion of the word ''trustee'' changed
the relationship of the parties, and varied the mode
of proof concerning their rights. C. D. West, trustee, is
not the same as C. D. West. Andrews v. Sibley et
al., 107 N. E. (Mass.) 395, in principle is practically
on all fours with the case at bar. There Sibley had
given his note payable to an insurance company in

payment of premiums and delivered same to one Williams. Williams erased the name of the insurance company and inserted his own. After this alteration he negotiated said note by endorsement and delivered it to plaintiff. The Supreme Court of Massachusetts in disposing of that case said: "The plaintiff cannot recover from Sibley on the note. It is conceded that the unauthorized change of the payee's name was a material alteration. The note was thereby avoided as against Sibley, by section 141 of the Negotiable Instruments Act. [R. L. C. 73.] The last sentence of that section, allowing a holder in due course to enforce payment of an altered note according to its original tenor even if applicable, cannot avail the plaintiff, as such a restoration would make the note payable to the order of the defendant insurance company, which never has indorsed it." Section 141 of the Negotiable Instruments Act in Massachusetts is identical with section 10094, Revised Statutes 1909, of our statute, supra. Even if it be conceded that plaintiff in the case at bar is a holder in due course, still it can recover only according to the original tenor of the note. According to the original tenor of the note here in question C. D. West was payee and not C. D. West, trustee. C. D. West has not endorsed this note to plaintiff, but C. D. West, trustee for Peter Dirnberger, has endorsed the note to plaintiff and the conclusion is inevitable that plaintiff took no title by the endorsement of C. D. West, trustee. It appears that Dirnberger added the word "trustee' after defendant had signed the note, and without defendant's knowledge or consent, as the word "trustee" in the face of the note is in Dirnberger's handwriting. By elimination it would appear that Dirnberger cut off the end of the note, and thereby destroyed or removed the place of payment. Lansinger, the maker, changed the place of payment in the note under consideration in Berks County Trust Company v. Lyte, supra. In the Lyte case the place of payment was changed; in the instant case by addition of "trustee" after the name of the payee the relation

of the parties was changed. Each change falls within section 10095, Revised Statutes 1909. In either case a holder in due course may recover according to the original tenor of the note. [Section 10094, R. S. 1909.] In Berks County Trust Company v. Lyte, supra, plaintiff could not recover because it sued on a note payable at one place, when defendant executed a note payable at a different place than the place mentioned in the note sued on. In the instant case plaintiff had sued on a note payable to C. D. West, trustee, and the evidence shows that defendant executed a note to C. D. West, and plaintiff, therefore, cannot recover. Appellant raises other questions, but the view that we take of this case under the undisputed facts, it is not necessary to go into other matters. It follows from the above and foregoing that the judgment of the trial court should be affirmed, and it is so ordered. *Farrington, J.,* concurs. *Sturgis, P. J.,* concurs in the result and in holding that the inserting of the word "trustee" after the name of the payee C. D. West was a material alteration [York v. Jones, 43 N. J. D. 332; Citizens Bank of Ramona v. Grant (Okla.), 152 Pac. 1062,] and so obvious to anyone looking at the note that plaintiff cannot claim to have acquired it without knowledge of its infirmity. [Elias v. Whitney, 98 N. Y. Supp. 667.]