KLUNDBY, Plaintiff and Respondent, vs. HOGDEN, Defendant and Appellant: ESTATE OF MASON and others, interpleaded Defendants and Respondents.

*October 14—November 11, 1930.*

For the appellant there was a brief by *Perry & Perry* of Black River Falls, attorneys, and *Higbee & Higbee* of La Crosse of counsel, and oral argument by *Jesse E. Higbee.*

*W. S. Wadleigh* of Galesville, for the respondent Mina Klundby.

*A. T. Twesme* of Galesville, for the respondent Thomas Mason estate and J. A. Berg, administrator.

ROSENBERRY, C. J.   The note in question was in the following form:

"$2,000.                    Galesville, Wis., Dec. 15, 1920.

"Two years after date, for value received, I promise to pay to the order of Mina Klundby, two thousand dollars, at the Farmers & Merchants State Bank, Galesville, Wis., with interest at six per cent. per annum from date until maturity, and at six per cent. per annum after due until paid.   Interest payable annually, and past-due payments of interest to draw interest at six per cent. per annum.

"I also promise to pay a reasonable attorney's fee for the collection of this note in case it is not paid at maturity.

"The indorsers, sureties, and guarantors severally waive presentment for payment, protest, notice of nonpayment, and diligence, and agree that the time of payment may be extended without affecting their liability.

(Signed)            "OSCAR HOGDEN.
                    "T. A. MASON.
                    "C. J. HOGDEN."

It is admitted that Oscar Hogden signed the note about five years after its delivery to the plaintiff.   In the absence of any other circumstances, the note, although past due at the time the defendant Oscar Hogden signed it, was negotiable (sec. 116.52, Stats.).   It is equally apparent that the addition of the name of Oscar Hogden was a material alteration of the note because it changed the number, relation, and liabilities of the parties (sec. 117.43).   Under such circumstances the note would be avoided as to all parties who had not authorized or assented thereto (sec. 117.42).

The finding of the court that the addition of the name of Oscar Hogden was a mere perfection of the note is based upon evidence produced on behalf of the plaintiff to the ef-

fect that it was the understanding and agreement of all the parties that Oscar Hogden should sign as a maker of the note and that his failure to so sign was due to oversight. This evidence is strenuously denied by Oscar Hogden and C. J. Hogden, who testify that Oscar Hogden refused to sign at the time of the making and delivery of the note to the plaintiff. The finding is amply sustained by the evidence.

The indebtedness was primarily that of Oscar Hogden, who received the money. The addition of his name to the document did not therefore change the relation of the accommodation makers as between themselves. It, however, enlarged their rights as against Oscar Hogden. While they are entitled to judgment over as against him, the time within which an action could be brought upon the original consideration has long since passed.

The fact that a material alteration works no detriment to the parties not assenting thereto is immaterial. *Mertz v. Fleming,* 185 Wis. 58, 200 N. W. 655.

The rule forbidding material alteration of an instrument rests upon sound public policy.

"Many opinions of different courts have stated that the law in relation to the material alteration of an instrument rests upon public policy, in that, to maintain the integrity surrounding commercial relations, no party to be benefited should be permitted under any guise to alter the written obligation of another without his authority or assent. To do otherwise would open a door to the perpetration of all kinds of fraud, inasmuch as written instruments, and especially commercial paper, are passed from hand to hand, through the hands of citizens, banks, and clearing houses, many hundreds and even thousands of miles distant from the party or parties to be bound, who have no control whatever over the possession of such instruments, and on account of which cannot prevent any person in the possession thereof from doing therewith as his inclination might dictate, in utter disregard of honesty and good conscience."

*Born v. Lafayette Auto Co.* (Ind.) 139 N. E. 364. See note and cases 5 Uniform Laws Anno. 635.

Did the accommodation maker, C. J. Hogden, assent to Oscar Hogden becoming a party to the note? If he did not he is discharged. Some cases hold that an effort of the payee to make the instrument speak the terms of the original agreement or understanding of the parties by the insertion of language in the instrument already delivered is a material alteration which avoids the note. *Born v. Lafayette Auto Co., supra; Handsaker v. Pedersen,* 71 Wash. 218, 128 Pac. 230; *Bolt v. State Savings Bank* (Tex. Civ. App.) 179 S. W. 1119.

Prior to the adoption of the Negotiable Instruments Act there were many decisions to the effect that an alteration intended merely to correct a mistake in the document as in the designation of a party according to the original understanding was not a material alteration. *Blenkiron Bros. v. Rogers,* 87 Neb. 716, 127 N. W. 1062, 31 L. R. A. N. S. 127, note and cases cited. See, also, note to *Holbart v. Lauritson* (34 S. Dak. 267, 148 N. W. 19) L. R. A. 1915 A, 166. While some of these decisions refer to the Negotiable Instruments Act, none of them involve facts such as appear in this case.

The language of the earlier decisions is that the material alteration avoids the note unless *consented to.* The language of the statute is that it avoids the note unless it was "made, authorized, or assented to."

In *Bolster v. Shaw* (Alberta Supreme Court) 31 D. L. R. 773, it appears that a note was being executed on behalf of a syndicate and that it was the understanding of the parties that as many members of the syndicate as possible should be procured to sign it, and the court held that the addition of the name in that case, having been made for the purpose of carrying out the original intention of the signatories who were seeking to take advantage of the alteration,

was assented to within the meaning of the statute. The court said:

". . . In applying this 'rule of law,' the widest interpretation should be given to the word 'intention;' that it should be taken in the wide sense of understanding. There is no question of contract but merely of a state of mind. And the word 'assent' used in the section of the act quoted is a word of much looser and wider signification than consent."

In *Bank of Moberly v. Meals,* 316 Mo. 1158, 295 S. W. 73, an opposite conclusion was reached upon a somewhat similar state of facts except that in that case it is said:

"There is no suggestion that there was any understanding that it (the note) was not to be regarded as delivered until signed by Otto Meals or that Otto was to sign it."

The court held that in the absence of such an understanding the subsequent signing by Otto was under the Negotiable Instruments Act a material alteration and void as to prior parties. See, also, *Farmers & Merchants Bank v. Parker,* 150 Tenn. 184, 263 S. W. 84, 35 A. L. R. 1253; *Born v. Lafayette Auto Co.* (Ind.) 139 N. E. 364.

We find no case except *Bolster v. Shaw, supra,* which considers the significance to be attached to the word *assent* as distinguished from *consent.* "*Assent* is an act of the understanding, *consent* of the will or feelings. We *assent* to the views of others when our minds come to the same conclusion with theirs as to what is true, right, or admissible. We *consent* when there is such a concurrence of our will with their desires and wishes that we decide to comply with their requests." Webster's Dictionary.

When all of the parties to the transaction in this case, as the court found, understood and agreed that the note given to the plaintiff was to be signed by Oscar Hogden, C. J. Hogden, and T. A. Mason, the court found that each of them assented to the terms of the contract as it is now writ-

ten. Through oversight the note was delivered without the signature of Oscar Hogden, who upon request subsequently affixed his signature. The assent of the original parties was never withdrawn. It is considered, therefore, that the note was altered with the assent of the accommodation makers.

A somewhat similar result has been reached by other courts upon dissimilar facts. *Hendrickson v. Lyons,* 121 Wash. 632, 209 Pac. 1095; *Whitehead v. Emmerich,* 38 Colo. 13, 87 Pac. 799; *Temple v. Harrington,* 90 Oreg. 295, 176 Pac. 430. It has been held that the signing of a note by a third party as guarantor after its execution and delivery is not a material alteration, but that the addition of a maker is material. *Paxon v. Kregel Casket Co.* (Mo. App.) 9 S. W. (2d) 856.

It is urged that under the facts of this case the delay of five years was unreasonable and should defeat the plaintiff's right to a recovery. Under ordinary circumstances we should be obliged to give great weight to this contention. It appears, however, that the plaintiff did not read the English language, was inexperienced in business, the document was put away, and that it never came to her attention that the signature of Oscar Hogden was omitted until after the death of Mason. As recited in the statement of facts, the situation of the parties has undergone no change so far as their relation to the instrument was concerned except that Mason has died. It is considered, therefore, that the delay did not defeat the plaintiff's rights.

It is also held that the instrument was not incomplete within the meaning of secs. 116.18 and 116.20, Stats. There is no claim in this case that the instrument was delivered with authority in any person to act for the makers in completing it. Oscar Hogden did not in signing the note act for any one but himself. The instrument, therefore, was not incomplete in the statutory sense.

*By the Court.*—Judgment affirmed.